IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| OLIVIA CORRIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-678 |
| | ) |
| MARION COUNTY SHERIFF and | ) |
| JOHNSON COUNTY SHERIFF, in their | ) |
| official capacities, and CORECIVIC, INC., | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

**Introductory Statement**

1. Olivia Corrie is a transgender woman who carries a diagnosis of gender dysphoria. As a result, in 2015 she was prescribed and began taking, in accordance with well-recognized standards for treating gender dysphoria, female hormones. This came to a halt, however, when she was arrested for a criminal offense in November of 2017. For a period of approximately seven months, she was transferred repeatedly between three facilities—Marion County Jail I, Marion County Jail II, and the Johnson County Jail. Despite the fact that she made persistent requests to receive hormone treatments while in each facility, medical personnel consistently explained that such treatments were not available to persons incarcerated in each facility. As a result, Ms. Corrie's testosterone levels increased and her estrogen levels decreased significantly over this period, and she suffered substantial physical and emotional harm. The failure to offer hormone treatments during her period of incarceration violated the Fourteenth Amendment to the United States Constitution. Ms. Corrie is entitled to her damages.

1

**Jurisdiction, Venue, and Cause of Action**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6. Olivia Corrie is an adult resident of Marion County, Indiana.

7. The Marion County Sheriff is the duly elected sheriff of that county, and is sued in his official capacity.

8. The Johnson County Sheriff is the duly elected sheriff of that county, and is sued in his official capacity.

9. CoreCivic, Inc. is a private corporation that contracts with the Marion County Sheriff to operate Marion County Jail II.

**Factual Allegations**

<u>Allegations Concerning Gender Dysphoria and Hormone Treatment</u>

10. Gender dysphoria, formerly known as gender identity disorder, is a recognized condition that is characterized by strong and persistent cross-gender identification and a persistent discomfort with one's sex or sense of inappropriateness in the gender role of that sex, causing clinically significant distress or impairment in social, occupational, or other important areas of functioning.

11. Persons with gender dysphoria are known as transgender persons.

12. Gender dysphoria is a severe psychological condition, recognized by the Diagnostic and Statistical Manual of Mental Disorders – 5th ed.

13. Left untreated gender dysphoria may result in debilitating anxiety, depression, suicidality, and other mental health disorders.

14. Persons with gender dysphoria who are born with the assigned gender of male may resort to attempting auto-castration to alleviate their distress.

15. The Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People ("Standards of Care"), published by the World Professional Association for Transgender Health ("WPATH"), provide the generally accepted protocols for the treatment of gender dysphoria. Those Standards of Care are available through WPATH's website at https://wpath.org/publications/soc (last visited Feb. 8, 2019).

16. The Standards of Care identify four options that should be considered in treating gender dysphoria:

    a. Changes in gender expression and role (which may involve living part time or full time in another gender role, consistent with one's gender identity);

    b. Hormone therapy to feminize or masculinize the body;

    c. Surgery to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, facial features, body contouring); and

    d. Psychotherapy (individual, couple, family, or group) for purposes such as exploring gender identity, role, and expression; addressing the negative impact of gender dysphoria and stigma on mental health; alleviating internalized transphobia; enhancing social and peer support; improving body image; or promoting resilience.

17. The number and type of interventions applied and the order in which these take place may differ from person to person.

18. Hormone therapy involves the administration of exogenous endocrine agents to induce feminizing or masculinizing changes.

19. For certain patients with gender dysphoria, hormone therapy is the only treatment that reduces dysphoria and can prevent the severe emotional and psychological harms associated with it.

20. The criteria for hormone therapy, as enumerated in the Standards of Care, are as follows:

    a. Persistent, well-documented gender dysphoria;

    b. Capacity to make a fully informed decision and to consent to treatment;

    c. Age of majority in a given country;

    d. If significant medical or mental health concerns are present, they must be reasonably well-controlled.

21. Once begun, stopping hormone therapy—particularly stopping hormone therapy "cold turkey"—can have significant detrimental emotional effects on a person with gender dysphoria, including chronic clinical depression, social anxiety, and suicidal ideation, as well as physical effects such as a change in voice or body fat distribution, body hair growth, and changes in sexual characteristics.

    Allegations Concerning Olivia Corrie

22. Olivia Corrie is a transgender woman, diagnosed with gender dysphoria, who resides in Marion County, Indiana.

23. Under a physician's care, Ms. Corrie began taking female hormones on October 24, 2015, and she took those hormones continuously until November of 2017. This hormone therapy accelerated the development of her female characteristics.

24. On or about November 15, 2017, Ms. Corrie was incarcerated following her arrest in Marion County for a criminal offense. She is aware that some official records may indicate that she was arrested and incarcerated on November 7th, but she believes that this occurred on November 15th.

25. For the next seven months, Ms. Corrie was continuously incarcerated as a pretrial detainee in three institutions: Marion County Jail I, which is overseen by the Marion County Sheriff; Marion County Jail II, also known as CCA, which is overseen by a private corporation (CoreCivic, Inc.) that has entered into a contract with the Marion County Sheriff to operate the jail; and, due to another pending charge in Johnson County, the Johnson County Jail, which is overseen by the Johnson County Sheriff.

26. Shortly after Ms. Corrie was first placed in Marion County Jail I, she was seen by a nurse conducting an intake examination. During this examination, she informed the nurse that she was a transgender woman who was taking prescribed hormones and that she needed to continue taking those hormones during her incarceration. However, she was informed by the nurse that providing hormones was something that Marion County Jail I simply "didn't do."

27. Ms. Corrie remained at Marion County Jail I for between four and six weeks. During this time she was placed in an isolated suicide cell for between eight and thirteen days, on a mental health wing for a period of time, and then into general population. In addition to the intake examination, she saw a nurse at the facility on at least two or three separate occasions, and may have seen a mental health professional or physician as well. On each occasion, she complained that she was not receiving her hormone treatments but was informed that hormone therapy simply was not offered at the facility.

28. In late December 2017 or early January 2018, Ms. Corrie was transferred from Marion County Jail I to CCA. Upon her transfer to CCA, she was seen by a nurse for an intake evaluation, and shortly thereafter she was seen by a physician because she contracted pneumonia. On both of these occasions, Ms. Corrie complained that she was not receiving

5

her hormone treatments. As at Marion County Jail I, she was informed that hormone therapy was simply not offered at the facility.

29. In the next couple of weeks, while still at CCA, Ms. Corrie again saw the physician at the facility. Upon again complaining that she was not receiving hormones, she was informed once more that hormone therapy was not offered at the facility, and was told that the facility was "not equipped to handle" transgender inmates.

30. Due to pending charges in two different counties, between January and March of 2018 Ms. Corrie was transferred repeatedly between CCA, Johnson County Jail, and Marion County Jail I. Every time she was transferred, Ms. Corrie received an intake evaluation from a nurse or other member of the medical staff at the facility to which she was transferred. Each time, she informed the treating medical professional that she needed to resume her hormone treatment; she was repeatedly informed at each facility, however, that hormone therapy was simply not offered during her incarceration.

31. In March of 2018, Ms. Corrie was transferred for the last time to the Johnson County Jail, where she remained until she was released on June 7, 2018. During this period, too, Ms. Corrie requested but was denied her hormone treatment.

32. All told, then, Ms. Corrie spent nearly seven months incarcerated in the three facilities and denied the hormone therapy that had been prescribed by her physicians and that she had been taking for years on the outside. As a result, she felt sick constantly. She began to grow body hair typically associated with men, and her estrogen levels decreased and testosterone levels increased significantly. She experienced anxiety, depression, and other emotional and physical damages.

33. Each of the three facilities at which Ms. Corrie was incarcerated has a practice or policy of

denying hormone treatment to transgender inmates.

34. The refusal to provide Ms. Corrie with hormone treatments during her period of incarceration was objectively unreasonable and constitutes deliberate indifference to a serious medical need.

35. The defendants acted or refused to act under color of state law.

**Legal Claim**

36. The defendants' refusal to provide Ms. Corrie with hormone treatments during her period of incarceration violated the Fourteenth Amendment to the United States Constitution.

**Jury Trial Demand**

37. The plaintiff demands a trial by jury on all issues so triable.

**Request for Relief**

    **WHEREFORE,** the plaintiff respectfully requests that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendants violated the rights of the plaintiff for the reason described above.

3. Award the plaintiff her damages.

4. Award the plaintiff her costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

    Gavin M. Rose
    ACLU OF INDIANA
    1031 E. Washington St.
    Indianapolis, IN  46202
    Ph:   317.635.4059
    Fax:  317.635.4105
    <grose@aclu-in.org>

    *Attorney for the plaintiff*